NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAURICE OPARAJI,<br><br>    Plaintiff,<br><br> v.<br><br>NORTH EAST AUTO-MARINE TERMINAL A.T.I., U.S.A., INC., RICARDO FURFARO, HUAL NORTH AMERICA, INC. (A/K/A AUTOLINERS INC.),<br><br>    Defendants. | Civil Action No. 04-6445 (KSH)<br><br><br>**OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

**I. INTRODUCTION**

  Maurice Oparaji ("Oparaji" or "plaintiff") brought suit against North East Auto-Marine Terminal, A.T.I, U.S.A., Inc., Ricardo Furfaro (President of A.T.I., U.S.A., Inc.), and Hual North America, Inc. on December 30, 2004, alleging breach of contract, breach of fiduciary duty, unfair trade and business practices, conspiracy, deceptive and negligent misrepresentation, and fraud. Plaintiff, proceeding *pro se*, alleges that he entered into an agreement with the defendants to ship a truck outfitted with dredging equipment to Lagos, Nigeria, and that defendants failed to make

the shipment and failed to return the goods to the plaintiff.

The plaintiff claims that the truck was mounted with two generators, four dredging pumps, and eight hoses. Plaintiff seeks damages in the amount of $198,750.00 for the cost of the equipment, $600,000.00 the loss of use of the equipment, $2,925.44 for ocean freight charges, and $13,500.00 for expenses incurred for food and lodging in Lagos, Nigeria while waiting for the arrival of the equipment, plus general damages, economic damages, property damage, compensatory damages, punitive damages, and "terrible damages as allowed by law according to proof, as provided by 15 U.S.C. § 15, 15 U.S.C. § 1117(a)." (Complaint ¶ 51.) Since this plaintiff is proceeding *pro se*, the Court will liberally interpret the complaint, applying the proper law whether or not cited by plaintiff. Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 248 (3d Cir. 1999). Although neither 15 U.S.C. § 15 nor 15 U.S.C. § 1117(a) are applicable to the herein complaint,[1] the Court will construe the plaintiff's request for treble damages if and when appropriate.

Defendants Hual North America, Inc. (hereafter, "HNA") and North East Auto-Marine Terminal (hereafter, "NEAT") have brought a cross claim against co-defendants A.T.I., U.S.A., Inc. (hereafter, "ATI") and Ricardo Furfaro (hereafter, "Furfaro") for indemnification and/or contribution.

Before this court is a motion to dismiss by defendants HNA and NEAT pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, asserting improper venue in the United States based on the forum selection clause in the bill of lading. In the alternative, defendants HNA and

---

[1] 15 U.S.C. § 15 provides for treble damages in antitrust actions; 15 U.S.C. § 1117(a) provides for treble damages in trademark actions.

NEAT request partial summary judgment pursuant to rule 56 of the Federal Rules, limiting plaintiff's recovery to $500 pursuant to both the "package limitation" clause contained in the bill of lading and the United States Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300-1315. For the reasons stated below, the motion to dismiss by defendants HNA and NEAT is denied and the alternative motion for partial summary judgment is denied.

## II.   ANALYTICAL STANDARDS

### A.   Motion to Dismiss Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court must accept all allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The motion to dismiss will be granted "only if it appears to a certainty that no relief could be granted under any set of facts which could be proved." D.P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984). However, that the Court "need not credit a complaint's bald assertions or legal conclusions. In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429 (3d Cir. 1997) (internal citations omitted).

### B.   Summary Judgment Standard

When considering a summary judgment motion under Rule 56, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact," the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). All facts will be viewed in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). In addition, all inferences drawn from the facts will be viewed in the light most favorable to the

3

non-movant, Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A material fact is a fact "that might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.

**III.    JURISDICTION**

Plaintiff asserts jurisdiction under various federal statutes, including 28 U.S.C. § 1332, diversity jurisdiction,  28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1367, supplemental jurisdiction.  (Complaint ¶ 2.)  The remaining statutes under which plaintiff asserts jurisdiction are not applicable to the facts of this case.[2]  These defendants argue that the "plaintiff's claim falls under the Court's admiralty and maritime jurisdiction pursuant to Rule 9 (h) of the Federal Rules of Civil Procedure, and the federal maritime law governs this action." (Moving Brief at 1.)  Defendant also states that the Court has "subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1331."  Id.  The Court notes that § 1331 invokes this Court's federal question jurisdiction, not its admiralty and maritime jurisdiction.  This Court's admiralty and maritime jurisdiction arises pursuant to 28 U.S.C. § 1333, so it appears that these defendants are invoking both admiralty and maritime jurisdiction as well as federal question jurisdiction for their cross claim.  However, notwithstanding their statement about the jurisdictional basis of the plaintiff's claim,  these defendants are not entitled to assert a different jurisdictional basis for the

---

[2]Plaintiff also asserts jurisdiction under 15 U.S.C. § 4, which governs jurisdiction over cases involving monopolies and restraint of trade, and 15 U.S.C. § 1121, which governs jurisdiction over cases involving trademarks, neither of which are applicable to the issues in this case.

4

plaintiff's claim than the plaintiff himself chose. Rule 9(h), cited by the defendants, permits a claimant "to remain the master of [his/her] case" by allowing the claimant to choose admiralty and maritime jurisdiction even where the claim can be brought within the jurisdiction of the district court on both admiralty and some other ground. Foulk v. Donjon Marine Co., Inc., 182 F.R.D. 465, 470 (D.N.J. 1998) (Irenas, J.) (*rev'd on other grounds*). The claimant's choice of jurisdictional basis "is significant because there are distinct procedural consequences which attach" to that choice. Id. For example, under the Court's admiralty and maritime jurisdiction, parties may make an interlocutory appeal under 28 U.S.C. § 1292(a)(3), which is not available in a non-admiralty case. Id. As another example, a party in an admiralty case does not have the right to a trial by jury. Id.

The plaintiff chose to bring his claim under diversity jurisdiction and federal question jurisdiction. If plaintiff's claim is cognizable in admiralty and also another ground, he is entitled to his chosen basis of jurisdiction. If, however, plaintiff's claim is *only* cognizable in admiralty, then his claim can only be brought under this Court's admiralty and maritime jurisdiction. "If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not." Fed. R. Civ. P. Rule 9(h). The first jurisdictional question, therefore, is whether the plaintiff's claim falls exclusively under this court's admiralty and maritime jurisdiction.

In Armstrong Cork Co. v. Farrell Line, 81 F.Supp. 848 (E.D. Pa. 1948) (Hall, J.), the plaintiff's goods were delivered to a warehouse on the pier and were damaged prior to loading on the ship. The plaintiff sought to invoke admiralty jurisdiction because he had received a dock receipt upon delivery, and because the underlying bill of lading was a contract for ocean

shipment. Id. at 848. The court held that while "it is obvious that the dock-receipt is a maritime contract [, i]t is equally obvious that the obligations arising before actual loading and while the goods were on the dock are separable from the strictly maritime obligations arising during the actual process of loading or after they had been received in the ships hold." Id. at 848-849. Therefore, the court held it did not have the jurisdiction to address those separable claims pursuant to its admiralty jurisdiction.

Judge Hall considered cases from other districts and circuits, and concluded that "each contract must stand on its own terms and incidents." Id. at 848. Judge Learned Hand, writing for the Second Circuit in 1927, provided a persuasive analysis that Judge Hall cited in his decision. Judge Hand stated, "[t]he mere fact that the contract covers a subject-matter of both kinds is not therefore decisive; that would make the mere form control. The substantial question is whether the maritime obligations can be separately enforced without prejudice to the rest." Compagnie Francaise De Navigation a Vapeur v. Bonnasse, 19 F.2d 777, 779 (2d Cir. 1927). This Court agrees with Judge Hall's analysis of the jurisdictional basis for a contract that contains both a maritime component and a non-maritime component. Other courts have also found his reasoning persuasive. See e.g. Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd., 775 F.Supp. 101, 105 (S.D.N.Y. 1991); also see Howmet Corp. v. Tokyo Shipping Co., 320 F.Supp. 975, 977 (D.Del. 1971).

In the case at bar, the plaintiff claims that he delivered the truck in good condition and received a dock receipt upon delivery, pending the ocean freight shipment to Nigeria, and plaintiff further claims that the truck was loaded onto a ship and subsequently unloaded prior to sailing due to a dispute over payment of the ocean freight charges. At that point, he alleges, the

defendants converted the truck to their own use. As in Armstrong Cork, the dock receipt is a maritime contract, but the obligations arising while the goods were on the dock are separable from the maritime obligations of that contract. The plaintiff's claim is not exclusively maritime, so the plaintiff is entitled to his chosen jurisdictional bases of federal jurisdiction. Therefore, this Court has jurisdiction over the plaintiff's claim pursuant to 28 U.S.C. § 1332, diversity jurisdiction, 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1367, supplemental jurisdiction.

HNA and NEAT state their jurisdictional basis for their cross claim against co-defendants ATI and Furfaro as follows: "This is a claim under the Court's Admiralty and Maritime Jurisdiction, and under the Court's diversity and pendent jurisdiction, made without waiver of any jurisdictional defenses or rights to proceed in an alternative forum." (Answer with Affirmative Defenses and Cross-Claim ¶ 10.)  So framed, this Court's jurisdiction over the defendants' cross claim is based on both 28 U.S.C. § 1333, admiralty and maritime jurisdiction, 28 U.S.C. § 1332, diversity jurisdiction, and 28 U.S.C. § 1367, supplemental jurisdiction.[3]

## IV.   BACKGROUND

The plaintiff asserts that he contacted ATI, a freight forwarder, to make arrangements to ship a number of vehicles via ocean freight to Lagos, Nigeria. (Plaintiff's Narrative Statement of Facts ¶ 3.) He states that he agreed to deliver the vehicles to NEAT, a shipping terminal in Jersey City, and to prepay the ocean freight charges. (Id. ¶ 4.) On May 17, 2004, as evidenced

---

[3] "Section 1367 codified the judicially-created doctrines of ancillary jurisdiction and pendant jurisdiction." In re Pantopaque Products Liability Litigation, 938 F.Supp. 266, 274 (D.N.J. 1996) (Lifland, J.).

by an ATI dock receipt, plaintiff delivered one truck to NEAT. (Dock Receipt, Plaintiff's Exhibit 2.) Plaintiff claims that the truck was a 1983 International Truck "in perfect condition," and that he paid $2,925.44 in ocean freight charges to ATI employee Furfaro on June 25, 2004. (Id. ¶¶ 5, 10.) The truck was loaded on the ship, but on or about July 30, 2004, Furfaro had the truck taken off the ship, claiming that the ocean freight had not yet been paid. (Id. ¶¶ 10-11.) According to the plaintiff, the "defendants refused to freight the consignment as agreed upon and converted the said 1983 International Truck to their use under false pretense that the Ocean Freight Charge was not paid." (Id. ¶ 14.)

Defendants HNA and NEAT claim that the truck is and has been available for the plaintiff to pick up from the pier at his convenience. (Defendants' Response to Plaintiff's Affidavit and Statement of Material Facts ¶¶ 22, 24.) Furthermore, they assert that the goods were received pursuant to the United States Carriage of Goods by Sea Act (hereafter, "COGSA"), which, in combination with the bill of lading, provides that each vehicle is subject to a $500 package limitation. (Moving Brief at 8.) Defendants argue, this Court should grant them partial summary judgment, limiting any recovery to $500. (Id. at 10.) Alternatively, defendants HNA and NEAT move to dismiss this claim for improper venue pursuant to Federal Rule of Civil Procedure Rule 12(b)(3) based on the forum selection clause in the bill of lading. (Moving Brief at 5.)

**VI.    DISCUSSION**

    **A.    MOTION TO DISMISS FOR IMPROPER VENUE**

Defendants HNA and NEAT point to language in the bill of lading that states, "Any claim

or dispute arising under this Bill of Lading shall be determined by the Courts of the country where the Carrier has its principal place of business and according to the laws of that country, except as provided elsewhere herein." (Defendants' 56.1 Statement ¶ 8; Hual Bill of Lading at 2, ¶ 3, Defendants' Exhibit D to Declaration of Barbara J. Lauth.) These defendants argue that since the dock receipt was signed for on behalf of the Master of the ship named the Hual Trekker, and since the Master of that ship was an employee of Hual A/S, a Norwegian company with its principal place of business in Oslo, Norway, the proper forum for this action is Norway. (Moving Brief at 5-7.)

In opposition, plaintiff claims that defendants ATI and Furfuro admitted in their answer that venue in this District is proper.[4] (Plaintiff's Opposition Brief at 5.) Plaintiff also claims that ATI told him that the shipment was to be aboard the Commodore, a vessel owned by HNA and registered in the United States. (Plaintiff's Response to Defendants' 56.1 Statement ¶ 5.) In support, he has submitted an unsigned dock receipt that he claims he received from ATI that lists the carrier of this shipment as the Commodore. (Plaintiff's Exhibit 3.)

Plaintiff states that he does not know anything about Hual A/S in Norway, and has never had any dealings with it. (Plaintiff's Response to Defendants' 56.1 Statement ¶ 8.) He further claims that defendants did not advise him that the goods were being shipped by Hual A/S, nor did any of the defendants mention Hual A/S in their answers to his complaint. (Id. ¶ 23.) Finally, plaintiff claims that he did not receive the bill of lading from the defendants that includes the

---

[4]Plaintiff's argument that defendants ATI and Furfuro admitted that venue in this District is of no moment to the claim by defendants HNA and NEAT that the venue is improper, and will not be addressed by the Court.

9

forum selection clause. (Id. ¶ 26.)

Forum selection clauses that are "unaffected by fraud, undue influence, or overweening bargaining power . . . should be given full effect." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13 (1972). Plaintiff alleges that he was told by ATI, the freight forwarder for HNA, that his goods were to be carried on a ship owned by a U.S. company and that he was not aware of the existence of Hual A/S, the company in Norway. Although he alleges that he did not receive the bill of lading upon which the forum selection clause was printed, the dock receipt clearly states that the receipt of the goods was subject to the terms of the bill of lading, a copy of which was "available from the carrier on request." (Plaintiff's Exhibit 2; Plaintiff's Exhibit 10.)

An examination of the bill of lading reveals that it is a form contract consisting of boilerplate language. Neither party advances the notion that any negotiation took place. Plaintiff's position is that he was defrauded into believing that the goods were sailing on the Commodore, which he alleges is ship owned by a U.S. company. His submission of an ATI dock receipt indicating that the carrier was originally scheduled to be the Commodore makes this claim more than a "bald assertion." In response, defendants argue that "[t]he COMMODORE dock receipt is not signed, dated, or stamped; it was admittedly never issued to plaintiff or received by him at the time of shipment." (Reply Brief at 3.) The Court does not find any evidence in the record before it that the plaintiff "admitted" that the Commodore dock receipt was not issued to him. Furthermore, since the goods were never shipped, there was no "time of shipment" when he would have received it.

The Court agrees that the dock receipt is not signed, dated, or stamped, but it was presented to the Court to support plaintiff's claim that he was fraudulently told that the goods

were being shipped on the Commodore. The plaintiff claims that the Commodore is owned by a U.S. company, which would, therefore, change the effect of the forum-selection clause in the underlying bill of lading, and would change the plaintiff's understanding of the contractual agreement into which he was entering. The Court also notes what appears to be a difference in bargaining power between these parties, which might call the enforcement of the forum selection clause into question. Plaintiff is an individual who appears to ship used vehicles to Nigeria on an occasional basis; he does not appear to be a sophisticated businessman. This particular contractual agreement is a boiler-plate form contract and shows no evidence of negotiated terms between the parties. "The typical case for invalidating a forum selection clause as a product of coercion occurs when consumers enter into form contracts . . . with corporations." General Engineering Corp. v. Martin Marietta Alumina, Inc., 783 F.2d 352, 360 (3d Cir. 1986). Because a motion to dismiss will be granted only if it appears that no relief can be granted under any set of facts that can be proved, the defendants' motion to dismiss on forum selection grounds is denied.

      B.      **SUMMARY JUDGMENT MOTION**

HNA and NEAT argue that this Court should grant them partial summary judgment and limit plaintiff's possible recovery to $500, based on COGSA. (Moving Brief at 8.) They point to the language of the dock receipt, which states that the goods were received "subject to all the terms of the undersigned's regular for[m] of dock receipt and bill of landing [sic] which shall constitute the contract under which the goods are received." (Defendants' 56.1 Statement ¶ 4; Dock Receipt, Defendants' Exhibit C to Declaration of Barbara J. Lauth.) According to that underlying bill of lading, defendants continue, the shipment is subject "only to the provisions of

11

the United States Carriage of Goods by Sea Act." (Defendants' 56.1 Statement ¶ 6.) Pursuant to the bill of lading, defendants contend, each vehicle shipped is considered "one freight unit" and pursuant to the COGSA "package limitation," the liability of the Carrier and the ship is limited to $500 per freight unit. (Defendants' 56.1 Statement ¶ 7.) In opposition, plaintiff merely says that he "disputes" the defendants' argument and claims that he was not issued a bill of lading. (Plaintiff's Response to Defendants' 56.1 Statement ¶¶ 6-7.)

COGSA, 46 App. U.S.C.A. § 1300-1315, applies to "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade." 46 App. U.S.C.A. § 1300. The term "carriage of goods" "covers the period from the time when the goods are loaded on to the time when they are discharged from the ship." 46 App. U.S.C.A. § 1301(e). See also SPM Corp. v. M/V Ming Moon, 965 F.2d 1297, 1300 (3d Cir. 1992). Therefore COGSA, as written, does not apply to the time when the goods are off the ship, such as when the goods are at the terminal prior to being loaded on the ship, or at the pier subsequent to being off-loaded from the ship at its destination.

The period during which COGSA applies by its express terms is called "tackle to tackle." See, e.g., Schramm, Inc. v. Shipco Transport, Inc., 364 F.3d 560, 564 (4th Cir. 2004) ("COGSA covers the period from the time when the goods are loaded on to the time when they are discharged from the ship. This period has been referred to as '"tackle to tackle."'" (Internal citations omitted.)). Also see Mannesman Demag Corp. v. M/V Concert Express, 225 F.3d 587, 589 (5th Cir. 2000) ("By its terms, COGSA applies 'tackle-to-tackle' only; it does not extend to losses which occur prior to loading or subsequent to discharge from a vessel.") However, COGSA provides that the carrier or shipper may extend the period of COGSA coverage beyond

the "tackles" period:

> Nothing contained in this chapter shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods *prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea*.

46 App. U.S.C.A. § 1307 (emphasis added).

Moving first to the defendants' arguments about the package limitations, the Hual bill of lading includes a clause that provides, "[o]ne vehicle to be considered one freight unit." (Hual Bill of Lading ¶ 11 (Defendants' Exhibit D).) Plaintiff admittedly delivered one vehicle to NEAT which is the subject of this controversy. (Plaintiff's Narrative Statement of Facts ¶ 5.) In addition, the dock receipt clearly shows the "NO OF PKGS." as "1." (Plaintiff's Exhibit 2; Plaintiff's Exhibit 3.) Therefore, under the terms of both the dock receipt and the Hual bill of lading, the plaintiff's shipment of one vehicle is considered "one freight unit."

The COGSA limitation of liability reads, in pertinent part, as follows:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package . . . or in case of goods not shipped in packages, per customary freight unit . . . unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.
>
> By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided*, That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained.

46 App. U.S.C.A. § 1304(5).

The COGSA limitation of liability provision is "applicable only to carriers and ships. . . . Stevedores and agents . . . are not covered by the COGSA limitation of liability provision." De Laval Turbine, Inc. v. West India Industries, Inc., 502 F.2d 259, 264 (3d Cir. 1974). Therefore, while neither the carrier nor the ship is liable for loss or damage to this vehicle beyond $500 per package, neither HNA nor NEAT fall under the category of "carrier" or "ship." In their moving brief, defendants state that "HUAL A/S was the Norwegian vessel owner and ocean carrier," and that HNA "was and is an agent for HUAL A/S." (Moving Brief at 3-4). Since HNA is neither a carrier nor a ship, but merely an agent for the carrier, HNA is not directly protected by the COGSA limitation of liability provision. Defendants state that NEAT "was HUAL A/S's terminal operator at the subject pier," and refers to NEAT as a "servant[s] of the Carrier." (Moving Brief at 4.) A "terminal operator" is neither a carrier nor a ship, therefore NEAT is not directly protected by COGSA's limitation of liability provision.

The defendants argue that the COGSA limitation of liability should nonetheless be extended to them by virtue of a "Himalaya clause" in the bill of lading. (Moving Brief at 4.) The so-called "Himalaya clause" was named after a ship called *The Himalaya,* "whose crew a passenger successfully sued because the carriage contract did not have such a limitation clause." SPM Corp. v. M/V Ming Moon, 965 F.2d 1297, 1305 n.8 (3d Cir. 1992). See Adler v. Dickson, (1955) 1 Q.B. 158 (A.C. 1954) (U.K.). The Himalaya clause from the Hual bill of lading reads as follows:

> IDENTITY OF CARRIER/HIMALAYA CLAUSE.  Neither the Carrier, nor a servant or agent of the Carrier or any independent contractor or subcarrier employed by the Carrier to carry out any of it's [sic] obligations hereunder shall in any circumstances whatsoever, by [sic] under greater liability to the Merchant than the Owner of the vessel named herein for

14

>    any loss, damaged [sic] or delay howsoever caused to the goods, but shall
>    be entitled to the benefit of every exemption, limitation, condition and
>    liberty herein contained in favour of the Owner of the vessel named herein.
>    For the purpose of this provision all such persons shall be deemed to be
>    parties to the contract evidenced by this Bill of Lading made on their
>    behalf by the Owner of the vessel named herein.

(Hual Bill of Lading ¶ 12 (Defendants' Exhibit D).)  The defendants argue that this clause extends the COGSA limitation of liability to HNA as an agent of the Carrier and to NEAT as a party employed by the carrier.  (Moving Brief at 4.)

In Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14 (2004), the Supreme Court considered a Himalaya clause in an ocean bill of lading covering the shipment of machinery from Australia to Huntsville, Alabama.  After the goods arrived at the U.S. port undamaged, they were extensively damaged during the inland train shipment from the port of Savannah to Huntsville.  The Supreme Court held that the Himalaya clause successfully extended the COGSA limitation of liability clause to the railroad.  However, in that case, the Himalaya clause expressly extended the limitation of liability clause to apply "beyond the 'tackles' – that is, to potential damage on land as well as on sea."  Id. at 391.  In the case at bar, the Court does not find a similar extension of the limitation of liability beyond the tackles.

Since the COGSA limitation of liability only applies from the time when the goods are loaded on to the ship to the time they are off-loaded from the ship, this limitation of liability is inapplicable.  Plaintiff alleges that the damage to his goods occurred either before the goods were loaded onto the ship or after they were off-loaded due to a dispute about payment of the freight charges.  There is no contention by either party that the goods were damaged on the sea.  The defendants have not raised any other contractual provisions that might otherwise limit their

15

liability.  Their motion for partial summary judgment based on the COGSA limitation of liability is **denied.**

## V. CONCLUSION

Based on the foregoing, the motion to dismiss/partial summary judgment motion by defendants Hual North America and North East Auto-Marine Terminal (document #12) is **denied.**  An appropriate order will be entered.

**Dated:   June 19, 2006**

/s/ Katharine S. Hayden
**Katharine S. Hayden
United States District Judge**